# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Walker Overseers, Appellants, *v.* Marion Overseers.

*Settlement of paupers—Act of June 13, 1836.*

Where a nephew lived with his uncle, contributing by his labor to the support of the family and having no distinct and exclusive possession of any part of the house, and no account of their respective contributions was kept by either, there is nothing to sustain the inference that the relation was that of landlord and tenant, and the nephew does not secure a settlement under the 3d clause of the act of June 13, 1836, § 9, which provides that a settlement may be gained " By any person who shall bona fide take a lease of any real estate of the yearly value of ten dollars, and shall dwell upon the same for one whole year, and pay the said rent."

In the absence of a lease between them, evidence of the yearly value of the farm, and of the nephew's work upon it, is immaterial.

*Contracts—Implied lease.*

All contracts rest upon the mutual and accordant wills of the parties. A lease cannot be fairly implied from circumstances and conduct which show that none was intended by the parties.

Argued April 20, 1891. Appeal, No. 231, Jan. T., 1891, by Overseers of the Poor of Walker township, from decree of Q. S. Centre Co., reversing an order obtained by appellants to remove certain paupers to the care of the Overseers of the Poor of Marion township. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

The facts appear by the opinion of the Supreme Court.

The conclusions of the court below embraced the following points, among others:

"5th. Daniel DeLaney was married in the fall of 1879, a short time before moving to Walker township. He took his wife with him and they occupied part of the house, owned by his uncle, separate and apart from the family of his uncle. This occupancy was by agreement between John and Daniel DeLaney. [1]

"6th. Part of the house Daniel occupied as a home for himself and family and part of the house was occupied in common with John DeLaney. The part so occupied by Daniel was of a yearly value exceeding ten dollars. [2] . . . .

"7th. . . . He did the greater part of the farming. This labor went for the benefit of John Delaney and his family, and a part of it was the consideration of the rent of the house by Daniel. In this manner Daniel contributed annually, for the space of at least four years, by his labor much more than ten dollars for the use and occupation of the house. [3]

"8th. . . . The actual relation existing between them, arising out of the general understanding and agreement, was that of landlord and lessee. The work on the farm by Daniel was done under such understanding, and the benefit of the work was so received by John DeLaney. The relation thus created constituted a lease of the part of the house occupied by Daniel. [4] . . . .

"13th. That in the year 1885, Daniel was legally settled in Walker township, under the provisions of the 3d paragraph of the 9th section of said act, viz.: by virtue of the lease of said house to him by his uncle John. This settlement began in the fall of 1879 and it continued for at least five years. The settlement thus acquired in Walker township is the last legal settlement of Daniel and his wife and family." [5]

One of the points submitted by the overseers of Walker township was as follows: The court is requested

"4th. To find that from the time the said Daniel DeLaney went into Walker township, being a married man and having children, and having neither paid rent nor taxes, but remained with his uncle, and done what work he did on his uncle's farm solely upon the understanding that upon his uncle's death he would be left what property belonged to his uncle, he did not

thereby gain a settlement in the said township of Walker. *Answer:* We cannot find the fact to be as requested in this point. Upon the contrary, we are clear and have found as a fact that Daniel became the lessee from John of a part of the house in Walker township from the fall of 1879 to the fall of 1885. That the annual rental value of the part so occupied by Daniel exceeded $10. That Daniel annually paid this sum and a greater sum by wages of labor." [6]

In accordance with the above findings the court entered a decree reversing the order of removal at the costs of the poor district of Walker township. The Walker Overseers appealed.

*Errors assigned* were, (1–5) the above findings by the court; (6) failure to affirm the above point, quoting the point but not the answer; (7) not affirming the order of removal, and (8) reversing the order of removal at the cost of the poor district of Walker.

*David F. Fortney,* for appellant.

*John H. Orvis, C. M. Bower* and *Ellis L. Orvis* with him, for appellee.

OPINION BY MR. JUSTICE McCOLLUM, March 28, 1892:

The order of removal issued by the magistrates was reversed by the court of quarter sessions on the ground that the pauper had acquired a settlement in Walker township by leasing real estate therein of the yearly value of ten dollars, dwelling on the same for one whole year and paying the rent. The learned judge of the court below found these facts from the depositions printed in the appellants' paper book, and our inquiry is whether they support his findings. Assuming that the testimony is credible, does it show a lease, an occupancy thereunder, and the payment of rent within the meaning of the third paragraph of the ninth section of our act of June 13, 1836, relating to settlements? If the conclusions reached by the learned judge are fairly deducible from and authorized by it, they must stand, although we may doubt their soundness. To reverse an order founded upon them we must be satisfied that they are not warranted by the evidence. Daniel Delaney, the pauper, came from Ireland to this country in 1871. He was then a single man, over twenty-one years of age, and from the time of his arrival here until 1885, when he suddenly became insane, and

was taken to an asylum, he lived in the family of his uncle, John Delaney, who, with the exception of a period of four or five months, resided in Marion township until the fall of 1879, when he purchased a small farm in the township of Walker, on which he has since lived. A few months before they went to Walker, Daniel was married, and at the time he became insane he had four children. It is admitted that prior to their removal to Walker, Daniel was legally settled in Marion, and it follows that he is chargeable there until it is affirmatively shown that he afterwards acquired a legal settlement elsewhere. The contention of the township of Marion is, that Daniel was a tenant of John during the period of their residence in Walker, and that as such he occupied premises of the yearly value of ten dollars, and paid the rent therefor. To this the township of Walker replies, there was no contractual relation between them concerning the occupancy of the house in which they lived; it belonged to John, who, with his wife, and Daniel, his wife and children, constituted one family, in the support of which the products of the farm were used without division, and no account was kept by either of his contributions. This reply is supported by the direct evidence, by the circumstances surrounding the case, by the relations of the parties, and their expectations respecting the succession to the property. In their use of the house there was nothing inconsistent with the family relation, or indicative of a distinct and exclusive possession by Daniel of any part of it. It was a small house, having only a kitchen and bedroom on the first floor, and whether there was more than one room upstairs the evidence fails to inform us. The fact that members of a family occupy separate sleeping rooms, does not warrant an implication that they are tenants of one of their number, who is the owner of the premises. John Delaney had no children, and Daniel was his favorite nephew. It was understood between them that at the death of John and his wife Daniel should "inherit the property." If a lease and an obligation to pay rent lurked in this understanding, they did not know it. A lease cannot be fairly implied from circumstances and conduct which show that none was intended by the parties. "All true contracts grow out of the intentions of parties to transactions, and are dictated only by their mutual and accordant wills. When this intention is

expressed, we call the contract an express one. When it is not expressed, it may be inferred, implied or presumed from circumstances as really existing, and then the contract thus ascertained is called an implied one: " Hertzog v. Hertzog, 29 Pa. 467. In the case under consideration the existence of an express agreement, having either the form or substance of a lease, is distinctly negatived by direct and positive testimony, the credibility of which is not questioned, and the evidence is not sufficient to justify an inference that Daniel leased from John any part of the house in which they lived. In the absence of a lease between them the evidence of the yearly value of the farm, and of Daniel's work upon it, becomes immaterial, and the questions raised by it require no discussion. All the specifications of error founded upon a finding that Daniel was a tenant of John while living with him in Walker township, are sustained.

The decree of the quarter sessions is reversed, and the order of removal is confirmed; and it is ordered that the Overseers of the Poor of Marion township pay to the Overseers of the Poor of Walker township such costs and charges as shall be deemed reasonable and just, and the record is remitted to the quarter sessions of Centre county for the due ascertainment thereof.