## Dr. L. T. Bremerman *v.* Wm. M. Hayes, Executor of Dr. Wm. H. Matlack, deceased, Appellant.

*Contract—Circumstances controlling implied promise.*

To sustain an implied promise to pay there must be circumstances, which, according to the ordinary course of dealing and common understanding of men, shows a mutual intention to contract in that manner.

*Evidence—Custom or usage of trade.*

Before a mere usage of trade, or a custom, can be so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious, as probably to be known to and understood by the parties entering into the contract.

*Evidence—Custom and ethics of medical profession—Question for jury.*

In a suit, by one physician against the estate of another, for professional services rendered decedent, it is error to reject an offer to prove a custom of the profession, a custom among physicians in the place of contract, not to charge for attendance on physicians, one physician on another; that as a matter of professional ethics, it was regarded as improper and unprofessional for one physician to charge another for his attendance. Such evidence is proper for the consideration of the jury along with the other evidence in the case.

Argued Nov. 18, 1897. Appeal, No. 128, Oct. T., 1897, by defendant, from judgment of C. P. Chester Co., Oct. T., 1896, No. 51, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Reversed.

Assumpsit. Before HEMPHILL, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $689.71. Defendant appealed.

*Errors assigned* among others were (1) in rejecting defendant's offer of evidence, as follows: "Dr. Edward Kerr being on the stand, plaintiff made the following offer which on objection from plaintiff was rejected. By Wm. M. Hayes: Q. What is the custom in that vicinity, in the vicinity of Downingtown, as to one doctor charging another where he attends him as his physician? Mr. Holding: I object. Mr. Hayes: We propose to show by this witness and several other doctors that it is the

universal custom with physicians not to charge for their attendance upon their fellow physicians; and we further propose to show that the ethics of the profession is such that physicians do not charge each other for their attendance, that as a matter of professional ethics one physician does not charge another for his attendance." (5) In rejecting defendant's offer of evidence: " Q. Is it or is it not the custom among physicians at Downingtown and elsewhere not to charge for the attendance on physicians, one physician on another? "

*Wm. M. Hayes*, with him *J. Carroll Hayes*, for appellant.— Implied contracts are such as reason and justice dictate, and which the law presumes from the relations and circumstances of the parties: Miller's App., 100 Pa. 568; 2 Kent's Comm. 450; 2 Black.'s Comm. 443; Keener's Quasi Contracts, 16, 19; Hertzog v. Hertzog, 29 Pa. 465.

The intention of the parties (as to the payment of services) must be gathered from all the facts and circumstances of the case: Moyer's App., 112 Pa. 290.

This implication (of an implied promise) is rebutted by proof of facts which repel the idea of a contract: Miller's App., 100 Pa. 568; Swires v. Parsons, 5 W. & S. 357.

There are few rules of law more stringent and unbending than those which govern the liability of common carriers, yet a usage known to the other party, or so universal that he must be presumed to know it, will control and limit that liability: McMasters v. Penna. Railroad Co., 69 Pa. 374.

In the Pennsylvania courts proof of customs has constantly been thus admitted, though they are in greater or less conflict with rules of law: Gordon v. Little, 8 S. & R. 533, 565; Davis v. Koenig, 165 Pa. 347; McCullough v. Ashbridge, 155 Pa. 166.

The test applied by the courts, as to the admissibility of a custom or usage, is whether it is so well established " as probably to be known to and understood by the parties entering into the contract: " Collins v. Mechling, 1 Pa. Superior Ct. 594; Ambler v. Phillips, 132 Pa. 167; Adams v. Ins. Co., 95 Pa. 348; 27 Am. & Eng. Ency. of Law, 711–712, and cases there cited.

The usages of a particular trade or business are presumed to be known to those engaged therein: Carter v. Coal Co., 77

Pa. 286; Esterly v. Cole, 3 N. Y. 502; 27 Am. & Eng. Ency. of Law, 762–764.

But even if our offer of proof were not generally admissible standing alone, it would be at least admissible as one of the facts going to show his intention not to charge, in corroboration of the other facts that all went to show that intention.

Similar proof has always been admitted in corroboration of other more direct proof: Meighen v. Bank, 25 Pa. 288; Ins. Co. v. Pendleton, 115 U. S. 339; McGowan v. Bailey, 179 Pa. 470.

It is a sufficient answer to an objection to testimony as irrelevant, that it tends in the slighest degree to sustain a material averment: Thompson v. Boyle, 85 Pa. 477; Brown v. Clark, 14 Pa. 469.

*A. M. Holding*, for appellee.—To take a case out of the operation of a general principle, a usage should have every requisite to give it validity. It must be ancient, certain, uniform and reasonable: Rapp v. Palmer, 3 Watts, 179; Coxe v. Heisley, 19 Pa. 243.

Before a usage or custom can be admitted to govern the rights of parties it must be so certain, uniform and notorious as probably to be known to and understood by the parties: Ambler v. Phillips, 132 Pa. 167; Corcoran v. Chess, 131 Pa. 356; Collins v. Mechling, 1 Pa. Superior Ct. 594.

The custom invoked is unreasonable, and cannot, therefore, be set up as a defense to the appellant's action. For this reason, also, evidence of it was properly excluded: Anewalt v. Hummel, 109 Pa. 271.

Now it has been repeatedly held in Pennsylvania that any custom or usage, by which the property of one man can be taken or appropriated by another without compensation, is unreasonable and cannot be set up as a defense: Shaw & Co. v. Pilling, 175 Pa. 78.

But assuming the usage or custom in question to have been well proved as an ancient, notorious, uniform and reasonable custom, still it is no defense here and was properly excluded, because a custom or usage cannot be suffered to control the general law of the land, or contradict the terms of a contract, express or implied: Bolton v. Colder, 1 Watts, 360; Coxe v. Heisley, 19 Pa. 243.

Customs to overcome contracts implied from the acts of the parties were also held inadmissible in Wetherill v. Neilson, 20 Pa. 448, Christian v. Dripps, 28 Pa. 271, and Dickinson v. Gay, 89 Mass. 29.

OPINION BY ORLADY, J., November 21, 1898:

This action was brought to recover the sum of $825 for professional services rendered by the plaintiff to Dr. Wm. H. Matlack, who was afflicted with partial paralysis in October, 1893, and continued in precarious health until July, 1896, when his illness resulted in death. During this interval Dr. Matlack received counsel and service, from a number of his professional brethren, one of whom, the plaintiff, claims from his estate the amount mentioned, on the basis of one dollar for each visit made by him. Dr. Matlack and the plaintiff advocated and practised the same system of medicine in the borough of Downingtown, and were professional friends.

On the trial of the cause the defendant offered evidence to prove that it was the universal custom with physicians not to charge for their attendance upon their fellow physicians; that the ethics of the profession prohibited such charges being made; that it was the custom among physicians in Downingtown not to charge for attendance on physicians, one physician on another; that as a matter of professional ethics it was regarded as improper and unprofessional for one physician to charge another for his attendance. Evidence to sustain each of these offers was rejected for the reason stated in excluding the evidence under the first offer, viz: " I do not think that the evidence is admissible. The law presumes where one renders services to another that the party who receives them contemplates to pay for them. There is an implied contract. This is an effort to deprive one of that legal presumption by showing that it is a custom amongst physicians in the neighborhood not to charge each other, and whilst that may be true among the bulk of the physicians I do not think it can control the intention of one man, or override the presumption that the law creates in his favor, that where he renders a service to another, whether a physician or not, there is a contract on the part of the party receiving it to pay for it." The rejection of the evidence as offered warrants us in assuming that the custom could

be proved as it was alleged in the offers: Helme v. Ins. Co., 61 Pa. 107. The language used by the court assumed that, to establish the custom, the offers would be supported by sufficient proof, and that the plaintiff knew of it, but, notwithstanding this, it was not admissible, by proof of such a custom, to override the presumption that the law creates in favor of one rendering service to be paid for it, and that by Dr. Matlack accepting the services of the plaintiff an implied promise to pay in money was created. But, to sustain an implied promise to pay there must be circumstances, which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract in that manner: Hertzog v. Hertzog, 29 Pa. 465; Walker v. Marion, 148 Pa. 1. What were the understanding and intention of these parties? Under all the circumstances of this case, this was a question for the jury. It was submitted to the jury by the learned judge, it is true, but without all the evidence, which, if fully coming up to the offers, would have a legitimate tendency to rebut the implication of a promise to give pecuniary compensation for the services rendered. It is unquestionably the law, that before a mere usage of trade, or a custom, can be so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious, as probably to be known to and understood by the parties entering into the contract: Ambler v. Phillips, 132 Pa. 167; Weld v. Barker, 153 Pa. 465. In the case in hand, the offers, as interpreted by the court below, not only assumed that the custom could exist; be known by the parties; was a reasonable one, yet it would not be evidence upon the question whether in the intention and understanding of the parties, the services rendered by the plaintiff were gratuitous. The defendant urged that the excluded evidence was not offered to nullify or defeat a contract of employment and compensation therefor, but tended to prove the manner of payment, by a known, certain, reasonable and universally recognized custom; that instead of receiving in money the compensation usually given for like service, the attending physician, accepted in full payment therefor, the benefits and advantages of a professional comity, which assured to him valuable professional advice and skill under similar conditions; the continuing good opinion of the members of a learned profession which was

deemed essential to success in his calling; and confidential scientific counsel in matters pertaining to his health and reputation. If the excluded evidence would show that the service rendered by the plaintiff was in pursuance of such an understanding between the parties, it would be proper for the jury to consider it along with the other evidence in the case. The question is not whether the custom would, of itself, be a complete defense to the action, but whether it was competent evidence in connection with the other significant circumstances bearing upon the issue of fact submitted to the jury. For this purpose, at least, the evidence embraced in the first offer should have been admitted. The code of ethics of the profession would not be evidence without accompanying proof that the plaintiff and Dr. Matlack mutually acknowledged themselves as bound by it at the time the services were rendered. The first and fifth assignments of error are sustained; the judgment is reversed and a venire facias de novo awarded.