## Hollihan *v.* Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Fright of horse—Speed—Ringing bell.*

1. In an action against a street railway company to recover for injuries resulting from the fright of a horse, no negligence on the part of the defendant company is established, where the evidence shows that the plaintiff was riding on horseback in the middle of a macadamized road on a down grade after having passed a curve; that a street car following the plaintiff rounded the curve and came down the grade at a high rate of speed with its bell continuously and loudly ringing at the curve and down the grade; and that the horse showed no sign of fright until the car was nearly opposite to him when he suddenly wheeled and whirled backward and his rump came in collision with the corner of the body of the car just back of the steps leading down from the front of the platform.

2. No inference of negligence is to be drawn from the mere fact that an electric car upon a suburban road is run at a good rate of speed.

3. It is the duty of a motorman to ring his bell when he sees travelers

upon the highway ahead of him at curves and when he approaches streets and roads which open into the highway, and if horses are frightened by the ringing and suddenly become unmanageable, the motorman is not chargeable with negligence which will render the company liable.

Argued April 17, 1913.   Appeal, No. 26, April T., 1913, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1910, No. 754, on verdict for plaintiff in case of Harry Hollihan v. Pittsburg Railways Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Trespass to recover damages for personal injuries. Before SWEARINGEN, P. J.

The facts relating to the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,500.   Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant.

*Craig Smith*, with him *Clarence Burleigh* and *William A. Challener*, for appellant.—There was not any evidence that there was any unlawful act done by defendant or its employees; at most the claim was that lawful and necessary acts were performed in an unnecessary and extraordinary manner, but there was not sufficient evidence upon which to base such a finding: Yingst v. Ry. Co., 167 Pa. 438; Smith v. Ry. Co., 187 Pa. 451; Dunkle v. City Pass. Ry. Co., 209 Pa. 125; Condry v. Traction Co., 228 Pa. 270; Wright v. Ry. Co., 213 Pa. 318; Phila. Trac. Co. v. Bernheimer, 125 Pa. 615; Steiner v. Phila. Traction Co., 134 Pa. 199; Webb v. Ry. Co., 202 Pa. 511; McKinney v. Traction Co., 19 Pa. Superior Ct. 362; Potter v. Traction Co., 176 Pa. 271; Phillips v. People's Pass. Ry. Co., 190 Pa. 222; Downey v. Rys. Co., 219 Pa. 592.

*M. H. Stevenson,* for appellee.—The case was for the jury: Reed v. Snyder, 38 Pa. Superior Ct. 421.

OPINION BY PORTER, J., July 16, 1913:

The plaintiff brought this action to recover for personal injuries alleged to have been sustained when the horse upon which he was riding came into collision with one of the defendant company's cars. He recovered a verdict and judgment in the court below and the defendant appeals. The first specification of error refers to the refusal of the court below to give binding instructions in favor of the defendant, and the second to the action of the court in overruling a motion for judgment non obstante veredicto.

The plaintiff had been employed to ride the horse from Pittsburg to Washington, Pa., by Mr. R. F. Stevenson, who had purchased the animal the day before out of a lot of horses which had been sent from the state of Ohio for sale. The plaintiff had reached the vicinity of the village of Mount Lebanon and had started to ride down the hill past the Mount Lebanon cemetery, where the defendant company operates a single track electric railway upon the right side of the highway and there is a macadamized roadway, for general traffic, to the left of the railway track. There is a curve in the highway at the top of this hill and the grade from this curve down to the cemetery gate is steep. The plaintiff was riding the horse in the middle of the macadamized roadway to the left of the street car track and had passed the curve and ridden down the hill a short distance when he heard a car of the defendant company approaching him from behind. The motorman rang the bell of the street car before rounding the curve and continued to ring it as the car moved down the grade. The horse did not exhibit any signs of fright when the car first approached, but continued to proceed along the middle of the macadamized road, entirely clear of the street car track. The testimony of the plaintiff as to the manner in which the accident occurred was not very clear in his

examination in chief. He said: "The car came down on the ring, ringing the bell so much; there must have been something loose about it so it was rattling that before I could get round the horse had started to get excited then, kind of backed up, and when I had hold of the lines with both hands I couldn't get round to give no signal or nothing else and she came round on me and I got hit." He testified that the bell was ringing "pretty hard." When questioned further by his counsel, as to what he meant by saying there was something loose about the car, he said: "I couldn't make out anything but the brakes or something was rattling, something about the bottom of the car. Q. Did you notice if that had any effect on the horse? A. It was the whole car, I guess." He testified that the horse wheeled with him, but that he could not say what part of the horse it was that was struck by the car. His testimony upon cross-examination was as to some of the material facts much more definite. He said that the horse did not scare when the bell of the street car first began to ring. When asked: "How far did you state your horse moved along the road from the time he began to show signs of fright until the accident?" his answer was "Not very far, just a few paces." He gave the following significant testimony: "Q. Were you able to keep the horse, or did you keep the horse out in the middle of the road until he made this jump over and was struck? A. I had the horse all the time from throwing us both right across the track. I got him in such a way that he couldn't get round on me, and then he got hit in the rump. He twisted round anyhow." It thus appeared out of the mouth of this plaintiff that the horse was in the middle of the macadamized road, proceeding on his way, in a position which involved no danger from the approaching car until the car had almost reached them, and that the plaintiff thought he had the horse under control. The horse had only moved a few paces after showing fright, when he whirled and his rump came in contact with the car. The sudden and unexpected action of the horse was

the only thing that rendered the collision possible. Had this action of the horse occurred at a time when the man operating the car ought to have seen the danger of a collision and avoided it the case might have been for the jury. But the testimony of this plaintiff clearly establishes that the horse did not get near the track in time to permit the motorman to do anything to avoid the collision. "Q. How close was the car to you when the horse jumped over so as to get struck by the corner of the car? A. Oh, the car was about on me then. I had no chance to work at all when he caught me. It was impossible to do anything then." The plaintiff was in no danger until he lost control of the horse; the horse only moved a few paces after showing any sign of fright, and he did not attempt to whirl and jump backwards until the car was so near him that it was impossible to do anything to avoid a collision.

The appellee contends that there was in this case sufficient evidence that the car was run at an excessive rate of speed and that the bell used to give warning of the approach of the car was rung a greater number of times than was necessary under the circumstances, and that it was proper, under this evidence, to permit a jury to infer that the excessive speed of the car and the unnecessary ringing of the bell had caused the horse to become excited and unmanageable, which resulted in his jumping against the car. The plaintiff testified that the car was "coming pretty good speed." The witness Smith said the car was "running fast" and "going speedily." His witness Beadling said the car was "running fast," and he also said "cars usually run fast around there." This was the sum total of the testimony produced by the plaintiff as to the speed at which the car was moving. Electric cars, upon suburban roads usually move at a good rate of speed; they run fast, and the fact that they do so is one of the reasons why they exist and are permitted to use the public highways; if they did not move speedily they would not meet the requirements of the public service, and no inference of negligence is to be drawn from the mere fact that they

do so: Yingst v. Lebanon Street Railway Co., 167 Pa. 438; Smith v. Railway Co., 187 Pa. 451; Dunkle v. City Passenger Railway Co., 209 Pa. 125; Condry v. Traction Co., 228 Pa. 270. There was not sufficient evidence in this case to warrant a finding that the rate of speed at which the car was moving was excessive, or that it involved negligence in the operation of the car.

The evidence as to the ringing of the bell was clearly insufficient to sustain a finding of negligence; there was no evidence that the bell used upon this car was of an unusual kind. The only evidence as to the quality of the sound was that of the witness Smith, called by the plaintiff, who said: "Q. Was this what you would call a clanging of the bell like they do sometimes? A. Sort of a musical ringing, ting-a-ling, like a man selling hot waffles." This witness also said that the ringing of the bell was continuous, as did also the plaintiff and Beadling. The plaintiff and Beadling testified that the ringing of the bell was continuous as the car came down the grade, and that it was loud. The bell upon a street car is for the purpose of giving warning of the approach of the car to those who are upon the highway or who are about to enter it. It is the duty of the motorman to ring his bell when he sees travelers upon the highway ahead of him, at curves and when he approaches streets and roads which open into the highway, and if horses are frightened by the ringing and suddenly become unmanageable, the motorman is not chargeable with negligence which will render the company liable: Philadelphia Traction Co. v. Bernheimer, 125 Pa. 615; Steiner v. Traction Co., 134 Pa. 199; McKinney v. Traction Co., 19 Pa. Superior Ct. 362. As to the allegation that the bell was rung loudly, that of itself does not show negligence; how far must the sound carry, to warn those whom it was intended to reach either on the highway or who might be about to enter it? That would depend on the state of the atmosphere at that time and the knowledge of the motorman derived from observation and experience. "No mere opinion or conjecture of those hav-

ing no knowledge on the subject should be permitted to convict him of recklessness:" Webb v. Railway Co., 202 Pa. 511.

When the motorman upon the car in question began to ring his bell the car was at a curve in the road, where the bell ought to have been rung, the plaintiff was a short distance ahead and there was certainly no negligence in ringing the bell to warn him of the approach of the car; the gate of Mount Lebanon cemetery, from which persons might be about to enter the highway, was 150 feet ahead of the plaintiff, and a street opened upon the right hand side of the road, at a point between the plaintiff and the cemetery gate. All the circumstances point to no conclusion of negligence in giving warning at that time and at that place, in the manner in which warning was in this case given. The horse upon which the plaintiff was riding never got upon the track in front of the car with which it came into collision. The front of the car had passed the horse, when the latter suddenly wheeled and jumped backward and the rump of the horse came into collision with the corner of the body of the car just back of the steps leading down from the front platform, knocking off the handrail used by passengers in descending the steps. There had been no indication until that moment that the horse had become or was about to become unmanageable. This case is ruled by Wright v. Monongahela St. Railway Co., 213 Pa. 318, and the specifications of error must be sustained.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.