## Walker *v.* Southern Pennsylvania Traction Company, Appellant.

Argued March 15, 1929.

8

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*D. Malcolm Hodge,* and with him *John B. Hannum, Jr.,* of *Hannum, Hunter, Hannum and Hodge,* for appellant.

*George H. Detweiler,* for appellee.

Opinion by Cunningham, J., July 2, 1929:

This is an appeal by the defendant in an action of trespass from the refusal of the court below to enter judgment in its favor n. o. v. Plaintiff sought to recover damages for injuries to his automobile which was rammed by one of defendant's trolley cars on Chester Pike in Delaware County, near the northerly boundary of Ridley Park. The learned trial judge refused defendant's point for binding instructions, submitted the questions of the negligence of its motorman and plaintiff's contributory negligence to the jury, and entered judgment upon the verdict in plaintiff's favor for $841.64.

About nine o'clock on the evening of April 23, 1927, while plaintiff was driving his automobile on the pike toward Philadelphia, it stalled on a hill. The pike at this point runs approximately east and west; there are concrete driveways seventeen and a half feet wide on each side, and between these driveways lie the double

tracks of defendant company, which operates a high-speed line from Chester to Philadelphia. The road-bed consists of T-rails fastened to wooden ties and ballasted with rough stone of the size used in the ordinary railway road-bed. The testimony is conflicting as to whether the ballast at the point of the accident was below the level of the concrete highways.

The collision occurred about midway between Hinkson Boulevard and Morton Avenue, north and south streets crossing the pike at right angles; the distance along the pike between these streets is about 1500 feet and the crossings over the trolley tracks are constructed of Belgian blocks; there is a trolley stop at each crossing but none between them, nor are there any intersecting streets. Hinkson Boulevard is the street nearest Philadelphia, and from this point the pike ascends a hill for approximately 150 feet, passes over the brow and descends toward Morton Avenue. Plaintiff's automobile, according to his version, stalled about 600 feet below the crest of the hill. He went to get help and returned, accompanied by a garage man, who parked his own car just above that of plaintiff. Being unable to start the engine, plaintiff, with the aid of a companion and the garage man, proceeded to push the car in a semicircle across the tracks and upon the westbound driveway so that it would be facing down hill. At that time the headlights of the automobile were turned off; it was lighted by the dome light on the inside, a dash light, two small cowl lights on the front (all of which gave but little illumination) and by the tail light. Plaintiff walked on the left side of the car by the wheel, directing its movement, while the other two men were in the rear. Plaintiff said that while the motor was on the tracks he looked up the hill and saw the trolley car coming over the brow of the hill, six hundred feet away. He made no attempt

to warn the motorman or his assistants but continued to push the car across the tracks. It was not until the trolley car was, as he said, fifty feet away, that he called to his companions to look out and then ran toward it to warn the motorman. The car failed to stop, hit the automobile, which, at that time, had its rear wheels on the south rail of the westbound track, and carried it down the hill about one hundred and fifty feet before stopping.

Plaintiff testified that the trolley car was going at a rate of thirty-five miles an hour and that he had not warned it sooner because he thought it would stop. The motorman testified that he was coming down the hill twenty-five miles an hour with the power off; that he could see about a car length and a half, or from sixty-five to seventy feet, ahead with the headlight then used on such cars; a car length was stated to be forty-five feet. He further testified that he did not see the automobile until the trolley car was sixty or seventy feet away, that he applied the brakes and then put the car into reverse, but that he could not stop it in time to avert the collision. Plaintiff claims that the motorman should have seen the automobile on the tracks and should have stopped in time to avoid the accident, and that the speed of the car, as shown by his own testimony and the distance it went after the collision, was sufficient evidence of negligence to take the case to the jury. Defendant, on the other hand, contends that there was no evidence of negligence because the trolley car was not shown to have been traveling at an unreasonable speed under the circumstances and the motorman had no way of seeing the car in time to stop, as he received no warning of its presence on the tracks and such lights as were lit were insufficient in themselves to give the warning, particularly as the tail light was obscured by a spare tire and

by the two men who were pushing at the rear. It is further urged that in any event plaintiff was guilty of contributory negligence because on a dark night he moved his car, without lighted headlights, upon the tracks, in such position that the lights which were lit were not visible in the direction from which the car approached; took no precaution to warn, at a sufficient distance to avoid a collision, any trolley cars that might approach; and, after he saw the trolley car six hundred feet away, made no effort to warn the operator until it had approached within fifty feet.

We need not discuss the question of plaintiff's contributory negligence because a majority of the members of this court are of opinion that the plaintiff failed to produce sufficient evidence of negligence upon the part of defendant's motorman to justify the submission of his case to the jury. Accepting the speeds and distances testified to by plaintiff as correct and reading all the evidence in the light most favorable to him, we think the circumstances relied upon do not show a want of due care.

Defendant's trolley car left Hinkson Boulevard on the other side of the hill and had no other stop until it came to Morton Avenue, fifteen hundred feet away. Between these two streets there was no crossing over the tracks on which the motorman might reasonably expect a vehicle to be; nor was it reasonable to anticipate that a motor car might be on the road-bed between crossings, as this part of the highway, with its tracks and rough stone, was obviously not designed for vehicular travel. While there was a possibility that cars or individuals might traverse it between intersections, as it was not inaccessible, such possibility would not be sufficient to create a reasonable expectation of their presence thereon. The measure of the duty underlying the doctrine of liability for negligence

is not to provide for every conceivable contingency, but to take such precautions as a reasonable, prudent man would take. Before successfully charging the motorman with the duty contended for by plaintiff, it would be necessary to show that there was a normal probability of such a situation, but the condition of the road-bed, together with the adequate and well defined driveways on either side, negatives such probability.

The speed of the trolley car, in itself, becomes immaterial unless the measure of duty contended for by plaintiff is established. "Electric cars upon suburban roads usually move at a good rate of speed; they run fast, and the fact that they do so is one of the reasons why they exist and are permitted to use the public highways; if they did not move speedily they would not meet the requirements of the public service, and no inference of negligence is to be drawn from the mere fact that they do so": Hollihan v. Pittsburgh Rys. Co., 54 Pa. Superior Ct. 204, 208. Plaintiff contends that if the car was going at such a rate of speed that it could not stop within the space which its headlight covered, this in itself showed negligence. No attempt, however, was made to show that the light used was other than the regulation headlight in use at that time. The operator of a trolley car should be required to have the car under such control that it can be stopped within its own light-length only if the objects to which it might cause injury may reasonably be expected to be on the tracks. Such, as we have seen, was not a normal probability in this case. Upon reaching a crossing, the car should, of course, be under such control as to be stopped within the range of its lights; and in the case of a trolley car which runs over the usual city street, where traffic is dense and the use of the highway common to all, it is of course negligence to run a car at a rate of speed that will not permit its

stoppage within the distance covered by its own headlight: Gilmore v. Passenger Rwy. Co., 153 Pa. 31. Here, however, it was operating on a high-speed line in a thinly-populated suburban district, at a considerable distance from the next crossing. When it actually came to a stop, it had not reached that crossing. If the motorman had disregarded a warning given when he was sufficiently far away that, despite the speed at which he was then traveling, he could have stopped in time to prevent the accident, this would have been indicative of negligence. Such, however, is not the case here. No attempt to warn was made until the trolley had covered all but fifty feet of the space over which it was visible to the plaintiff and this obviously came too late to avoid the ensuing collision.

The case of Kulp v. Lehigh Valley Transit Co., 81 Pa. Superior Ct. 296, cited and relied on by plaintiff and the court below, presents a different set of facts. There the accident occurred on a private crossing and in daylight. The trolley car was three to four hundred feet away from the crossing when the auto stopped and had it in view for that distance. The failure of the motorman to stop under such circumstances clearly presented a jury question.

Defendant's point for binding instructions should have been affirmed.

The judgment is reversed and here entered for defendant.