Supplee-Wills-Jones Milk Co., Appellant, *v.*
Southern Pennsylvania Traction Company.

Argued November 19, 1929.

Before PORTER, P. J.,
TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and
BALDRIGE, JJ.

*Matthew Rankin,* of *Geary and Rankin,* and with him *Harry J. Alker, Jr.,* for appellant, cited: Weikel v. Pullman Taxicab Co., 59 Pa. Superior Ct. 595; Stevenson v. United States Express Co., 221 Pa. 59.

*D. Malcolm Hodge,* of *Hannum, Hunter, Hannum & Hodge,* for appellee, cited: Gavin v. P. R. T., 271 Pa. 73; Wagner v. Lehigh Traction Company, 212 Pa. 132.

OPINION BY GAWTHROP, J., February 28, 1930:

Appellant charged defendant with the negligent operation of its trolley car which ran into its team and caused the death of a horse and damage to the wagon and harness. The learned trial judge entered a compulsory nonsuit and from the refusal to take it off this appeal was taken.

The jury could have found the following facts: About daybreak on January 23, 1928, Bushee, plaintiff's employee was driving one of its two-horse milk wagons westwardly on Chester Pike. The horses had been driven daily by this driver for six months over the same milk route; they were about ten years old, steady, reliable and accustomed to being left unhitched and unattended in the heavy traffic in the Boroughs of Norwood and Moore, Delaware County, and along the Chester Pike. During that time they had never moved away from the place where they were left unhitched and unattended. Bushee left his team standing unhitched and unattended on the northerly side of the Pike about fifty feet west of Madison Avenue while he went up a flight of steps forty-five feet high and then a distance of two hundred feet to serve milk at a customer's house. The Chester Pike at this point runs approximately east and west. There are concrete driveways seventeen and a half feet wide on each side

and between these driveways lie the double tracks of
defendant company, which operates a high speed line
from Chester to Philadelphia. The roadbed consists
of T-rails fastened to wooden ties and ballasted by
rough stone. The stone is below the level of the con-
crete highways. At every street intersection there is
constructed a Belgin block crossover connecting the
surface of the two strips of concrete. There was such
a cross-over at Madison Avenue. The part of the street
occupied by the tracks was not designed for vehicular
traffic passing east and west. When Bushee reached
the customer's house he heard the blowing of the
whistle on defendant's car and looked and saw his
horses standing in the westbound street car track with
the car approaching from the east at a distance of
four or five hundred feet. Bushee started toward the
wagon. It was dark. He could see the headlight on
the front of the approaching car and the whistle was
blowing almost continuously. He ran toward the team,
but before he got to it the trolley struck one of the
horses and moved fifty or sixty feet before it stopped.
The motorman said to Bushee: "I thought you were
on there, I thought you were going to pull off." The
horses did not move from the time Bushee saw them
on the track until the collision. A passenger on the
trolley car testified that he was sitting on the third
seat from the front on the right hand side of the car;
that after he heard the motorman ring the gong two
or three times he looked out of the window and saw
plaintiff's wagon standing one hundred and fifty or
two hundred feet ahead, "a lettered wagon, that's the
way it appeared to me, right along side of the right
hand rail of the right hand trolley track. The left
front wheel of the wagon was in the ballast," the rear
left wheel was on the concrete and the "left hand horse
as you look toward Chester" was "across the first
rail." This witness and another passenger agreed
that the speed of the trolley car was between fifteen

and twenty miles an hour. The motorman had the current on when the car struck the horse. One of plaintiff's witnesses had been an operator of trolley cars. He testified that under the conditions and circumstances existing just before the accident, the trolley car could have been stopped within the space of thirty feet.

The reason given for the entry of the nonsuit was that plaintiff's testimony was insufficient to rebut the presumption of its contributory negligence arising from the fact that the team was left unhitched and unattended on a public highway. The motion to take off the nonsuit was dismissed on that ground and on the further ground that the evidence was insufficient to establish defendant's negligence.

In so concluding the court fell into error. Appellant is entitled to all favorable inferences which the jury might draw from the evidence. There was positive testimony that the team was standing in a position of peril upon the track in view of the operator of the car at a distance of one hundred and fifty feet, and that the car could have been stopped within forty feet. Whether the motorman ought to have observed the peril and avoided the collision was a question for the jury: Byrne v. Electric Co., 19 Pa. Superior Ct. 531; Natvig v. P. R. T., 293 Pa. 355; Estep v. Beaver Valley Traction Co., 278 Pa. 414; Wehr v. Carbon County Electric Rwy. Co., 217 Pa. 490; Woelfel v. Federal Street Rwy. Co., 183 Pa. 123. Nothing was decided in Walker v. Southern Pa. Traction Co., 97 Pa. Superior Ct. 7, which is inconsistent with this conclusion. In that case our Brother CUNNINGHAM said: "If the motorman had disregarded a warning given when he was sufficiently far away that, despite the speed at which he was then travelling, he could have stopped in time to prevent the accident, this would have been indicative of negligence. Such, however, is not the case here. No attempt to warn was made until the trolley

had covered all but fifty feet of the space over which it was visible to the plaintiff and this obviously came too late to avoid the ensuing collision.'' That case is clearly distinguishable from the present upon its facts.

The question whether the driver of the team was guilty of contributory negligence was also for the jury. ''While it is true that the leaving of a horse unhitched and unattended in a city street raises a presumption of negligence, placing upon the party so doing the burden of justifying the act, the question whether the burden has been met is for the jury'': Jordan v. Eisele, 273 Pa. 95; Stevenson v. United Express Co., 221 Pa. 59; Henry v. Klopfer, 147 Pa. 178; Weikel v. Pullman Taxicab Co., 59 PPa. Superior Ct. 595. ''The presumption of negligence is only a presumption of fact and not a presumption of law. It is enough to justify a verdict against the plaintiff, but it does not require such a verdict.'' If it were otherwise the act would amount to conclusive evidence of negligence rather than prima facie evidence of it.

The compulsory nonsuit should not have been granted. The judgment is reversed and a new trial is awarded.