Magyar, Appellant, v. Pennsylvania R. R. Co.

Argued October 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*C. J. Tannehill,* with him *E. T. Adair,* for appellant.— The situation is one which should be submitted to the jury as a matter of fact to determine whether or not it was the duty of defendant, under the facts as shown and the rule as offered by the plaintiff, to give warning of the approach to the scene of this accident: Seaboard Air Line Ry. v. Koennecke, 239 U. S. 352; Mumma v. Ry., 275 Pa. 277; Van Zandt v. R. R., 248 Pa. 276; Chicago, R. I. & P. Ry. v. Ward, 252 U. S. 18; Dutrey v. Ry., 265 Pa. 215; King v. Brick & Mining Co., 284 Pa.

277; Schaeffer v. R. R., 168 Pa. 209; Sorensen v. Advertising Co., 284 Pa. 209.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for appellee.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:
Magyar, the deceased, was employed as a switchman by the defendant company, which operated a railroad from Pittsburgh to the east. Its passenger trains passed what were known as the Pitcairn yards on rails which did not enter therein. On May 22, 1925, it ran the Pennsylvania Limited in two sections, moving both on its main eastbound track. The second followed the one preceding after an interval of about ten minutes, and, in passing the point in question on a clear morning, it struck Magyar, who was tending a switch located between the track on which it was moving and a parallel one leading into the freight yard. The passenger train had given the proper signal at a fixed point at the west, and its approach could be observed for a long distance in that direction. The employee killed stood between the through and yard tracks, but was so close to the former that he was struck by the cylinder of the engine of the passing train. An attempt was made to warn him of the danger when the latter was about 100 feet away, and at the time when he was first observed. A whistle was also sounded by a freight engine, standing within the yard, when the possibility of the accident became evident. Neither signal was heard, or, if so, the warning was unheeded.

The accident occurred within what are known in railroad parlance as "yard limits," where, in case of need, trains may be shifted, usually when there is but a single main track, and which covers a considerable distance on both sides of the "yard," but the latter "consists of two or more tracks used for the purpose of assembling cars, that is, making up trains, storing cars and switching

cars": 40 Cyc. 2875. In the present case, the eastbound express, which hit deceased, was not within the yard, as comprehended by that term in the printed regulations of the company. The rule itself was not admitted, since it was inapplicable to the case at bar. It regulated signals to be given by the defendant's engineers, requiring two long and two short blasts of the whistle, under the following conditions and circumstances: "Approaching public crossings at grade, and, when view is obscured by weather and other conditions, approaching interlocking plants, stations, yards or other points where men may be at work on tracks."

This made necessary in all cases a signal in "approaching a public crossing," but not where nearing "yards or other points where men may be at work on tracks," except "where the view is obscured by weather or other conditions." Here, the evidence clearly showed that the exceptional circumstances requiring the blowing of a whistle were not present, since the train coming from the west, admittedly, could be clearly seen, and visibility was not interfered with in any way, nor was there any offer to show the existence of the conditions making the signal obligatory. It was earnestly argued that the rule covered the situation as it existed when decedent was killed; however, it is unnecessary to decide this question. Even if the regulation was applicable, it is undisputed that the signal was given at the first moment the deceased came within sight, and no disregard of the railroad's rules was shown which would furnish sufficient proof of negligence.

The present action was based on the Federal Liability Law, but this legislation does not make the company responsible for injuries sustained by an employee which were assumed as a risk of his employment: McCully v. Monongahela Ry. Co., 289 Pa. 393. Magyar was aware of the presence of the adjoining passenger track, having been in service at the point in question for a long period, and also of the fact that trains passed at great speed

over the same. His position made possible unobstructed vision of the approaching engine for a considerable distance, yet, for some reason, he continued to stand within two and one-half feet of the nearest rail, and, as a result, was struck. It was his duty to operate the switch leading into the yard on a parallel track, and the other employees were bound to use due care to prevent injury to him when so employed. The railroad company was liable if his injury occurred by reason of their negligence in operating its trains (Seaboard Air Line v. Koennecke, 239 U. S. 352), or failing to give a warning at the place designated by the company, and upon which the decedent had the right to depend (Krall v. P. R. R. Co., 287 Pa. 332), or where it was customarily given by an approaching engine, and known to and depended on by the employee: Dutrey v. P. & R. Ry. Co., 265 Pa. 215. In the present case, Magyar was aware of the dangerous position, was standing upright with the oncoming train in full view, and failed to move out of the reach of the locomotive, when he had ample opportunity to so move. The risk which he took was palpably evident, and the injury was not the result of an unusual, extraordinary or unexpected act of the engineer of the Limited, which hit him, as in the Dutrey Case cited. The train was moving at high speed, as it had a right to do, and was not within the line of the yard. Though attempting to give a precautionary signal, when the deceased was seen, its engineer had no reason to believe that the switchman would remain motionless within the space necessarily occupied by the overhang of the plainly visible train.

Plaintiff insists, however, that he should have been permitted to show by a brakeman of many years standing that it was customary to give a warning to employees working at the particular switch, and, further, that it was not safely constructed or located, and that in refusing this testimony error was committed which makes necessary the grant of a new trial. It will first be noticed that the warnings ordinarily required were fixed

by written rules of the railroad, and the present case does not come within the scope of the one proposed to be offered, but was rejected as inapplicable to the situation presented. Arendas, a brakeman, was asked as to the custom of signalling, and Magyar, the son of deceased, was also interrogated as to whether other trains blew whistles at the switch. In both cases the proposed testimony was refused, and the assignments of error relating thereto may be jointly considered.

The court refused the offers to show that engineers going east usually gave signals when the point in question was reached, since the defendant could be bound only by a practice of which it had knowledge, and impliedly authorized, particularly in view of the fact that a written rule definitely determined when the whistle should be blown, as it had been on the day of the accident. "Usage is a reasonable and lawful public practice concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties or so well established that they are presumed to have been known, and acted with reference thereto": Henry on Trial Evidence, p. 160. The custom to be valid must have been followed for so long a time as to have become generally known, so that the parties may be presumed to have had knowledge of and acted with reference to it. "In order to acquire the force of law it must be so certain and uniform in operation as to leave no doubt of its application, nature and character. It must also be continuous (McMasters v. R. R., 69 Pa. 374), notorious (Ambler v. Phillips, 132 Pa. 167), and of general application under like conditions": Henry on Trial Evidence, p. 161; Carlo v. Bessemer & Lake Erie R. R. Co., 293 Pa. 343. The offer as made was clearly insufficient to bring it within the principles laid down, nor was there any effort to show that the deceased had knowledge of the alleged practice of eastbound engineers to blow a whistle (Margo v. P. R. R. Co., 213 Pa.

463; Miller v. Wiggins, 227 Pa. 564), or that the giving of such signal was so notorious that he must have known and depended on it: Collins v. Mechling, 1 Pa. Superior Ct. 594; Bremerman v. Hayes, 9 Pa. Superior Ct. 8.

Error is further alleged in refusing to permit Arendas to testify that this switch could have been placed at a safer location. The rejection of this testimony was proper. Though even nonexpert witnesses, after describing a physical location, may express an opinion that a situation was dangerous, when the description of the locality makes it difficult for the jury to appreciate it (22 C. J. 510; McNernay v. Reading City, 150 Pa. 611; Kitchen v. Union Twp., 171 Pa. 145; Sorensen v. Quaker City P. A. Co., 284 Pa. 209), and experts may give professional opinions as to causes or results (King v. D., B. & M. Co., 284 Pa. 277; Schaeffer v. P. & R. R. R., 168 Pa. 209), yet "where the question involved is such as can be understood by any person without special knowledge, training or skill," such testimony is unnecessary and inadmissible: Henry on Trial Evidence, p. 371; Woeckner v. Erie Electric Motor Co., 187 Pa. 206; Holmes v. Allegheny Traction Co., 153 Pa. 152. In any case, adequate knowledge of the witness to express an opinion must appear. So, a locomotive fireman cannot testify as to the need of a safety switch at a particular point (Ballard v. N. Y. C. R. R. Co., 126 Pa. 141), nor can any one unqualified by experience testify as to the duties of an engineer at a crossing (Born v. P. & R. R. R., 198 Pa. 409), nor can such a one give the cause of a mine cave-in: Lineoski v. Susquehanna Coal Co., 157 Pa. 153.

A jury cannot be permitted to find that a defendant could have made use of a better or less dangerous device than the one customarily used, when an accident occurs: Purdy v. W. E. & M. Co., 197 Pa. 257. The location of switches and similar structures along the right-of-way of a railroad is a matter for the determination of the directors. As was said by Mr. Justice KEPHART in McCully

v. Monongahela Ry. Co., supra, p. 398: "Where they shall be placed and how they shall be arranged are questions that belong to the railroad company as truly as the location of the switches and sidings, or of the track itself." It is not for a witness to say that a safer point could have been selected. In support of this proposition, it is needless to refer to other than Dooner v. D. & H. Canal Co., 171 Pa. 581, where the earlier cases are, collected and discussed; Boyd v. Harris, 176 Pa. 484; and McCully v. Monongahela Ry. Co., supra. The proposed testimony was properly rejected.

A careful examination of the entire record leads to the conclusion that no trial error appears, and a nonsuit was correctly entered.

The judgment is affirmed.