## Kilgallen v. Philadelphia Rapid Transit Co., Appellant.

452

Argued April 24, 1930.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Marshall A. Coyne,* for appellants.—Plaintiff was guilty of contributory negligence: Magyar v. R. R., 294 Pa. 585; Rothweiler v. Transit Co., 93 Pa. Superior Ct. 369; Chew v. Transit Co., 90 Pa. Superior Ct. 155.

*Fletcher W. Stites,* for appellee.—Where workmen are engaged in work which requires their presence on trolley car tracks or the tracks of a railroad and also demands their full attention in performance of their duties, the failure of a motorman or engineer to sound a gong or warning of the approach of the train or trolley car is sufficient evidence of negligence to require the submission of the case to the jury: Chew v. P. R. T., 90 Pa. Superior Ct. 155; Diehl v. R. R., 254 Pa. 404; Craven v. Rys., 243 Pa. 619; Hugo v. R. R., 238 Pa. 594; O'Malley v. Traction Co., 191 Pa. 410; Owens v. Ry., 155 Pa. 334; Van Zandt v. R. R., 248 Pa. 276.

The question of plaintiff's contributory negligence was for the jury.

OPINION BY MR. JUSTICE SCHAFFER, May 27, 1930:

Plaintiff was employed by a firm of contractors engaged in building a sewer on Main Street in the Borough of Darby. His duty required him to keep watch at night over the red warning lanterns which were placed along the open trench to see that they were lighted. The defendant maintains two lines of track in the bed of Main Street, the south one for eastbound cars and the north one for westbound. The trench was dug on the north side of the westbound track about 18 inches from the north rail and the lanterns were placed on boards laid across the excavation at about that distance clear of the track. On the night he was injured, about 10:30 o'clock, he was on the south side of Main Street (owing to the building of the sewer, traffic on the north side having been shut off), and noticed that one or more of the lanterns had gone out. He crossed the street from the south to the north side, passing over both tracks, and was engaged in placing a lighted lantern on the trench, when he was struck and injured by one of defendant's cars running on the westbound track. He testified that when he left the south side of the street he looked for a car on the westbound track and saw none, that he also looked

when he got on the north side of the car tracks and did not see any. His view in the direction from which the car approached was an unobstructed one for about 300 feet, at which point there was a curve in the track. A witness called by him, who was driving an automobile along Main Street at the moment of the accident, and saw it, observed the oncoming car from the time it rounded the curve. Plaintiff said he was standing in the space between the north rail and the excavation, which as before stated, was about 18 inches in width, and was leaning over to place the lamp in position on the plank when he heard the car coming, "and I lifted myself up and the trolley car was right on me. I swung myself around to get clear. Then I was struck." He said he had no knowledge of the approach of the car until he heard the rumble "right on top" of him. It struck him on the hip. He testified that the car gave no signal of its approach. He had been working on the job for two weeks and knew that cars passed on the west-bound track every five minutes. From this recital of the circumstances of the accident taken from plaintiff's own testimony, it is obvious that while he was standing out-side of the track, in the act of stooping over to place the lantern in position he brought himself within the sweep of the overhang of the car and thus caused his contact with it. Whether the motorman saw him does not appear. Plaintiff did not call him as a witness and defendant offered no testimony.

Why plaintiff did not observe the approaching car it is difficult to conceive unless he was inattentive to his surroundings. There is no claim that its headlight was not lighted or that the lights in the car were not burning. The car was within his plain view for 300 feet. He was outside the rail and the slightest movement would have put him beyond the line of danger. This is not a case where workmen are engaged on or close to railway tracks and where the operator of the car with knowledge of their presence must be watchful to avoid

injuring them, such as these cases cited by plaintiff: O'Malley v. Scranton Traction Co., 191 Pa. 410, where a car of the defendant ran into a gang of workmen engaged in paving the street; or Owens v. Peoples Passenger Ry., 155 Pa. 334, where plaintiff, an employee of the city, was laying a water pipe under defendant's track and in doing the work was compelled to stand in the track with his back toward approaching cars, in which it was shown that on all other occasions than that of the accident the defendant's employees had notified the city's employees of the approach of the cars; or Van Zandt v. Phila., Balto. & Washington R. R. Co., 248.Pa. 276, where the plaintiff was an employee of an independent contractor engaged in work about the piers of a railroad bridge in a place of danger from passing trains and was struck by a train which approached without warning, in which the presence of the plaintiff at the place of the accident was known to defendant's engineers and plaintiff relied on them to warn him by signal of the approach of trains; or Chew v. P. R. T. Co., 90 Pa. Superior Ct. 155, where the plaintiff was one of a gang of city employees engaged in the work of repairing streets and while working close to the track in daylight was run down by defendant's car, where the defendant's motorman knew that the plaintiff and the other men were working at the scene of the accident. No workmen were employed on the sewer at the time of the accident and the motorman, even if he knew that plaintiff was engaged as a watchman over the trench, had no reason to suppose that he would be standing where he was, as his duties did not necessarily require him to be there. In principle, the case in hand is closely analogous to Magyar v. P. R. R. Co., 294 Pa. 585, in which a nonsuit was entered and sustained by us, where a switchman took position at a switch close to the tracks of a railroad over which he knew passing trains were running. We held that standing in such a position and being struck and killed by the overlap of the passing

locomotive, he could not recover. Walker v. Southern Penna. Traction Co., 97 Pa. Superior Ct. 7, has a bearing on the case at bar in that there was no reason for the motorman to anticipate the presence of the plaintiff near the tracks between street crossings. Rothweiler v. P. R. T. Co., 93 Pa. Superior Ct. 369, also has some relation to the instant case. There judgment for the defendant non obstante veredicto was sustained, where the plaintiff stopped a truck at the side of a street and squatted down beside it in close proximity to a street car track for the purpose of examining a spring; while doing so he knelt too near the track and was struck by a passing car. It was there said that the plaintiff voluntarily put himself in a position of danger which resulted in his injury, that he knew of the narrow space between the truck and the overhang of a trolley car, and was bound to know that street cars were likely to pass, and if he miscalculated the space which he occupied, he thereby contributed to his own injury. What was said in Bardis v. P. & R. Ry., 267 Pa. 352, 354, where the plaintiff assumed a position of danger near a track, is most pertinent here: "There was no necessity for him to assume the position that he did...... There was ample space in which to work and be clear of all tracks, but he chose to stand in a place of known and obvious danger. Even then he could have looked and listened and could either have seen or heard the car approaching. In any event, it would have taken but the fraction of a second to have stepped out of its road...... In thus assuming a place of danger he is presumed to know the consequences of his act. ...... By the...... slightest attention to the circumstances surrounding him, he would have been warned to move. There can be no escape from the conclusion that he was guilty of contributory negligence."

It is said that no warning was given of the car's approach, but no warning was required, as the plaintiff was between intersecting streets at least 50 feet beyond

the one east of him. It is also argued that there was a "stop" sign at this street, but such a sign does not ordinarily mean that all cars are to stop at the street; it means only that cars will stop there to take on passengers if there are any. Furthermore, if the plaintiff had been watchful, he would have seen that the car did not stop at the intersecting street and moved back to avoid it. There was no negligence under the circumstances in the speed of the car, 20 miles an hour. The case is not similar to those in which negligence is imputed to the defendant from failure to make a near side stop as required by city ordinance, such as Boyle v. P. R. T. Co., 286 Pa. 536. This accident took place in a borough and no such ordinance was shown, nor was plaintiff at a point where he would be harmed by the failure to stop.

Our review of the record and consideration of the authorities leads us to the conclusion that the court should have given binding instructions for the defendant or entered judgment for it non obstante veredicto.

The judgment is reversed and is here entered for defendant.