Bass *v.* Pennsylvania R. R. Co., Appellant.

Argued March 18, 1931.   Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Robert D. Dalzell,* of *Dalzell, Dalzell & McFall,* for appellant.—The essential averments of plaintiff's claim must be proven as averred: Steigmaier v. Keystone Coal Co., 225 Pa. 221. Plaintiff must not only prove a cause of action, but the cause of action set forth in his statement: McLean v. Schoenhut Co., 225 Pa. 101; Killeen v. R. R., 270 Pa. 123; Rodell v. Adams, 231 Pa. 284; Harris v. Blitzstein, 84 Pa. Superior Ct. 498.

It is the contention of appellant that there was no proof of negligence on its part. To leave the question to the jury, under the circumstances, amounts to leaving the management of the railroad to juries, instead of to its officers: McCully v. Ry., 289 Pa. 393; Baker v. Fehr, 97 Pa. 70; Fouhy v. R. R., 17 W. N. C. 177.

*Thomas M. Benner,* for appellee.—The case was for the jury: Van Zandt v. R. R., 248 Pa. 279; Owens v. Ry., 155 Pa. 334; Holt v. R. R., 206 Pa. 356; Boggess v. R. R., 234 Pa. 379; Mimoni v. R. R., 75 Pitts. L. J. 452.

OPINION BY MR. JUSTICE SCHAFFER, April 13, 1931:

In this action plaintiff is seeking recovery of damages for the death of her husband, who was struck by one of the defendant's trains while he was standing on the rail of one of its tracks, engaged in inspecting repair work on a bridge belonging to the City of Pittsburgh which spanned the railroad. In the court below plaintiff obtained a verdict and judgment. Defendant has appealed.

The work was being done by a contractor engaged by the city. The latter employed the deceased as a bridge inspector. The bridge crosses the four main tracks of defendant entering Pittsburgh. Over them a great volume of traffic moves requiring the frequent passage of trains. The railroad company had three men stationed

along its tracks to give warning of their approach. One of them was stationed about 65 feet from the bridge under which the deceased was standing and to the west along the westbound track, another at a bridge 553½ feet distant and the third at still another bridge 700 to 800 feet to the east of where the deceased was. The general direction of the railroad tracks is east and west. The deceased when struck was standing on the southerly rail of the south track beneath the bridge looking up at the work being performed, which consisted of injecting a mixture called gunite into the cracks and crevices of the bridge by air pressure. The air compressors made much noise in their operation and were located on a street which ran parallel with the tracks and but a short distance south of them. The workmen making the repairs stood upon a movable staging underneath the bridge.

The accident occurred about 8:30 A. M. The train, consisting of eight or nine passenger coaches, was running at a speed variously estimated at from 18 to 35 miles an hour on the south track, the engine at the rear end. A brakeman was stationed on the front platform, where he operated a whistle to give warning of the train's approach. The circumstances indicate that the deceased did not hear the whistle, although others in his vicinity, on the opposite side of the tracks, did. In addition to the whistle on the train, the employee of the railroad stationed near the bridge on the westbound track had a large whistle attached to an air hose which was used to warn those on the tracks of the approach of trains. It was also blown to warn the deceased of the approach of the one in question, which was seen coming toward him by the railroad's employee who was standing nearest to him when it was more than 525 feet away. The men who were on the opposite side of the railroad could not get to the deceased to give him greater warning because of the approach of another train between them and him which passed after the train which had

struck the deceased stopped. The testimony shows that the deceased could have seen the train when it was more than 550 feet away from him. It stopped after striking him in from two to five car lengths.

The court below, following the jury's verdict, ruled the case in plaintiff's favor on the authority of Van Zandt v. Phila., B. & W. R. R. Co., 248 Pa. 276. We reach the conclusion that it is not determinative of the issue. In the case relied on, the plaintiff was required to perform his work in the place where he was struck. There is no evidence of such requirement in the case in hand, that in performing his work the deceased was required to stand on the rail of defendant's track. All that was shown in this respect was that he had to go down on the tracks to inspect the work, not on any particular track or not to any certain place. In that case, the deceased was employed by a contractor erecting a bridge for the railroad company, here the deceased was employed, not by the railroad company or one doing work for it, but by the city. There the evidence established that the workmen engaged at the place of the accident depended on a signal to warn them of approaching trains, and it was testified that no signal or bell or whistle was sounded of the approach of the train which struck the plaintiff. In the case in hand, it was not shown that the deceased depended on a signal to warn him of the approach of the train and it affirmatively appeared in plaintiff's case (the defendant offering no testimony) that the whistle on the train was blown as it approached him, that it was heard by others in the vicinity where he was standing and that the loud air whistle was blown. Evidently the unfortunate man did not hear these warnings, but this could not visit defendant with the consequences of his failure so to do. Nor can his failure to hear because of the noise made by the air compressors be ascribed to defendant. They were not being used by defendant, but by the city's contractor, working on the bridge, and were not located on defendant's prop-

erty, but on the public street. The deceased was just as familiar with the noise they made as the defendant could have been and knew they handicapped his hearing.

Furthermore, there was no occasion for the deceased to stand where he did on the rail of the track. He could have stood elsewhere. When he decided to occupy the place which he selected, he was bound to know that it was one of peril to him and to safeguard himself by observation. A turn of his head, taking but an instant of time, would enable his eyes to sweep the track in both directions to see whether there was any oncoming train. The one that struck him he could have observed from the time it was 553 feet away from him. He could not put himself in peril by standing on the rail and making no observations to guard against the imminent danger from moving trains on the track and cast the blame for his inattention on the railroad company. He was at all times within a step of safety. The recent case of Kilgallen v. P. R. T. Co., 300 Pa. 451, in principle is somewhat analagous to the instant one; there the plaintiff was employed by the builders of a sewer being laid alongside the tracks of a street railway to keep watch at night over red warning lanterns placed along the open trench to see that they were lighted and was struck by a car which he could have seen approaching for 300 feet, while in the act of stooping over to place a lantern in position. We said (page 454) : "Why plaintiff did not observe the approaching car it is difficult to conceive unless he was inattentive to his surroundings. ...... The car was within his plain view for 300 feet. He was outside the rail and the slightest movement would have put him beyond the line of danger." The case in principle is also allied to Magyar v. P. R. R. Co., 294 Pa. 585, where a switchman took position at a switch close to the tracks of a railroad over which he knew passing trains were running, where we held that if while standing in such a position he was struck and killed by the overlap of a passing locomotive there could be no re-

covery for his death. The language of Bardis v. Phila. & Reading Ry. Co., 267 Pa. 352, 354, is apposite to the pending controversy: "He chose to stand in a place of known and obvious danger. Even then he could have looked and listened and could either have seen or heard the car approaching. In any event, it would have taken but the fraction of a second to have stepped out of its road....... In thus assuming a place of danger he is presumed to know the consequences of his act. By the simple movement of his head, or the slightest attention to the circumstances surrounding him, he would have been warned to move. There can be no escape from the conclusion that he was guilty of contributory negligence." We are of opinion that the deceased's own negligence was the cause of his being struck by the train.

The judgment is reversed and is here entered for defendant.