## Chernuka, Appellant, *v.* Philadelphia Electric Company.

Argued April 24, 1935; reargued November 26, 1935. Before FRAZER, C. J., MAXEY, DREW, LINN and BARNES, JJ.

*Robert M. Bernstein,* with him *Milford J. Meyer,* for appellant.

*John P. Connelly,* for appellee.

OPINION BY MR. JUSTICE LINN, January 6, 1936:

Plaintiff appeals from judgment n. o. v. in her action brought to recover for the death of her husband. He came in contact with defendant's high tension wire in circumstances which prevent recovery.

On the night of May 20, 1933, a storm broke a pole about a foot from the ground; after the pole fell the upper end rested on a cross-arm. The pole had a number of such cross-arms carrying wires which remained in place. The fall of this pole drew toward it the next pole (without bringing it down) causing the wires to sag. No wire in the vicinity of the fallen pole rested on the ground; one wire was near it; the next nearest was about a foot above that, and the third a foot above the second. These two poles were on opposite sides of a lane leading to the farmhouse of one, Onkow. He erected a barrier across the lane to warn anyone coming to his house from the main road via the lane. About 10 o'clock on the morning of May 21st, Chernuka, the decedent, with his wife and children, drove into the lane to visit Onkow. The Onkows saw them approach and Mrs. Onkow warned Chernuka "not to get close to the wires." When he reached the barrier, his wife and children got out and walked to the house which was quite near, while he drove off the lane away from the suspended wires and over the field to the barn. Before allowing his wife and children to walk to the house, he cautioned them to keep away from the wires. After all had gathered at the house, Chernuka again warned his children to keep away from the wires. Later, Onkow and Chernuka walked down the lane toward the wires, Chernuka walking slightly in advance. When he reached a point about five feet from the wires and near where they sagged across the lane, he (in Onkow's words) "slipped or stamped on a stone" and "fell" bringing his body in contact with one of the wires about three and a half feet above the ground. He died instantly.

The dangerous conditions were obvious; there was abundant warning; no necessity took him so near to the danger. "In thus assuming a place of danger he is presumed to know the consequences of his act": Bass v. R. R. Co., 303 Pa. 382, 387, 154 A. 714. "Having thus chosen to take the chance of the result, [he] must personally abide by the consequences": Jones v. Counties Gas and Electric Co., 289 Pa. 128, 130, 137 A. 168; see also Lindsay v. Glen Alden Coal Co., 318 Pa. 133, 177 A. 751. The opinions in the cases relied on by appellant, Smith v. Harwood Electric Co., 255 Pa. 165, 99 A. 473, and Laudenslager v. P. P. & L. Co., 312 Pa. 169, 167 A. 778, clearly show that the danger in those cases was not so apparent as to enable the court to declare contributory negligence as matter of law; here there is no doubt on the point. In Haertel v. Pa. L. & P. Co., 219 Pa. 640, 642, 69 A. 282, we said: "How [the deceased] came in contact with the wire is pure speculation, with a strong implication from the circumstances that it was occasioned by his own imprudence. While electric companies are bound to use the highest degree of care practicable to avoid injury to everyone who may be in lawful proximity to their wires, yet the ordinary person is held to know that danger attends contact with electric wires, and it is his duty to avoid them so far as he may. If one heedlessly brings himself in contact with such a wire, and is injured in consequence, his imprudence must be regarded as a contributing cause, and will prevent a recovery." See also Williams v. Metropolitan Edison Co., 267 Pa. 158, 110 A. 92; Parker v. Pa. Power Co., 301 Pa. 375, 152 A. 538; Hoke v. Edison Light & Power Co., 284 Pa. 12, 130 A. 309; Eberlin v. Phila. Electric Co., 306 Pa. 239, 159 A. 439.

Something is said on appellant's behalf to the effect that Onkow and Chernuka were in search of a better route to avoid the wires than that by which Chernuka drove round the barrier. But the plan and the photo-

graphs in evidence show very clearly that such investigation would not bring them to the place where the accident occurred.

Judgment affirmed.