Szuwalla et ux. *v.* Reading Company, Appellant.

Argued April 22, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellant.

*Jay B. Leopold,* with him *A. Jere Creskoff,* for appellees.

OPINION BY MR. JUSTICE DREW, May 9, 1938:

Miquon is a small suburban community on the Norristown branch of defendant's railroad, where it maintains a station, with a platform and shelter on each side of its double tracks which run north and south parallel with the Schuylkill River. A crosswalk, approximately level with the tops of the rails, connects the two platforms.

At about midnight, on July 4, 1935, plaintiffs' twenty-one-year-old daughter, intending to take a northbound local train to Conshohocken, arrived on the west platform. The train had already reached the station, and was then standing on the northbound track taking on and leaving off passengers on the east platform. It was necessary for her to cross the tracks to get upon the train and this she could not do because the train stood over and completely blocked the crosswalk. However, she went out to the side of the train, crossing the southbound track, and while standing on the crosswalk in the space between the two tracks, attempted to attract the attention of someone on the train. It does not appear how long she remained there but it does appear from the testimony that "all of a sudden she turned around and started walking back fast." Before she could reach the platform, a distance of about eleven feet, she was struck and killed by a southbound express, traveling to Philadelphia, at a speed of forty-five or fifty miles an hour. Her parents subsequently brought this action of trespass. Following a verdict for them, defendant filed motions for judgment n. o. v. and a new trial, which were refused. From the judgment entered on the verdict, as reduced, this appeal was taken.

The testimony shows that from a point twenty-five feet south of the crosswalk and in the center of the west platform, a locomotive approaching on the southbound track could be seen when it reached a point 429 feet away. As stated by the trial judge, in his charge to the jury, the decedent had a "somewhat greater view" as she stood at the side of the standing train. The tracks north of the station, the direction from which the express train came, curve toward the left or west, which prevents a further view from either of these points of observation.

It is impossible to avoid the conclusion that this unfortunate girl was guilty of negligence as a matter of law. Her own conduct was her undoing. She came late for her train, she attempted to cross the tracks when it was obvious she could not, and she completely disregarded the peril in which she placed herself when she went to the closed side of the train and fixed her attention upon it. While the express came upon her in about six seconds after it could have been first seen, that was a risk she accepted; she knew when she crossed the southbound track that she could not get to the other side, and also that a train might approach on that track at any time, and she knew that if one did approach, as it did, her only escape would be back across the track directly in its path. This was the chance she took. By providing the crosswalk, defendant in no wise assured her that it was safe to go upon it at any time except in the exercise of reasonable care. She tested a known danger, and recovery for losses incident to her death cannot be sustained: *Chernuka v. Philadelphia Electric Company*, 320 Pa. 193; *Bass v. Pennsylvania R. R. Co.*, 303 Pa. 382; *Lynn v. Pgh. & Lake Erie R. R. Co.*, 267 Pa. 41.

Judgment reversed and here entered for defendant.

Mr. Justice MAXEY, Mr. Justice STERN and Mr. Justice BARNES dissent.