Richards *v.* Reading Company, Appellant.

514

Argued January 10, 1939.  Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for
appellant.

*Thomas J. Clary,* with him *Vincent P. McDevitt,* for
appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1939:
Plaintiff brought this action on behalf of herself and
three minor children for damages for the death of her
husband, Milton M. Richards.  Following a verdict in
her favor, defendant filed motions for judgment n. o. v.
and a new trial, which were refused.  From the judg-
ment entered on the verdict, as reduced, this appeal was
taken.

Mr. Richards was killed July 14, 1936, at about four o'clock p. m. by being struck by the locomotive of a freight train of the defendant in the Borough of Annville, Lebanon County. The defendant operated trains over a double track line running east and west through a sixteen foot high limestone cut, about one-half mile west of Annville station. It was in that cut this accident happened. The tracks there are straight for a distance of one-half mile in both directions. Not anything obstructed the view. It was a bright, clear afternoon.

Richards was superintendent of construction of C. L. Miller, contractor, who was building an overpass over defendant's railroad for the Highway Department of the Commonwealth of Pennsylvania. The work on the approaches to the bridge started on June 27, 1936. And on July 8, 1936, the Resident Engineer of the defendant, in charge of engineering and inspection of construction and surveys, notified his company inspector on the job that the construction of the bridge might proceed on railroad property.

On the day of the accident all the work on the project was done on the north side of the railroad, and all the men except one were a considerable distance away from the tracks. That man, Burroughs, was operating a pneumatic drill at a point eight to ten feet from the north rail of the westbound track. It was a part of Richards's duty, as the superintendent in charge of the excavation and blasting, to determine where and how holes should be drilled for blasting the limestone, and just prior to his death he was observed standing in the ditch in the rear of Burroughs, a foot and a half or two feet from the north end of the ties of the westbound track. He was directing and controlling the work being done by Burroughs. The drilling and blasting was a technical job, and required skill. Since the work was near the railroad, considerable care had to be taken not to disturb the tracks. In addition to the pneumatic drill, a

gasoline driven compressor, located north of the tracks and on top of the bank, was in operation.

Richards was struck by some part of the engine of a freight train traveling westward at a speed estimated by witnesses as approximately 45 to 50 miles per hour. No order had been given for the slow movement of trains past the point in question, nor had any request been made for such an order. There was evidence that some trains sounded warnings as they approached the location and others did not. As a result the men could not depend on a signal to warn them of an approaching train.

The statement of claim averred that Richards's death was caused by the negligence of the defendant in the operation of its train at an unlawful speed, without regard to the presence of persons lawfully on its right-of-way, without giving warning of its approach and without instructing its engineer to sound whistle warnings, "although the railroad tracks curved sharply immediately before reaching the scene of the building of the overpass."

An affidavit of defense was filed denying negligence on the part of the defendant and averring that the decedent was guilty of contributory negligence.

It is undisputed that from where he was standing Richards had a clear view of the track for one-half mile in either direction, and that the train could have been seen by him thirty-six seconds before it struck him. It may reasonably be inferred that his work required him to be near the place where he was hit. He had to go near the track to spot the holes, but it was not necessary for him to stand in any certain place at any given time. He chose a position of peril, and it was his duty to safeguard himself by careful observation of the track. As the train passed, Burroughs, who was but a few feet from Richards, stood approximately eight feet away from the ties and was in a place of safety. Hence, the conclusion is inescapable that Richards could have been

actually at work and in a place of safety. In addition, if he had been exercising due care, he would have seen the approaching train in plenty of time to take the step necessary to remove himself from all danger. The accident would not have happened if he had been on the alert, as he was bound to be in the perilous situation he placed himself. He was in no sense employed by defendant nor was defendant in any way responsible for the noise of the machines which may have prevented Richards from hearing the approach of the train. He was familiar with the noise of the pneumatic drill and the air compressor and knew it handicapped his hearing, so it was all the more incumbent upon him to keep a close watch. He did not act as a reasonably prudent man would have acted in his dangerous situation and therefore plaintiff cannot recover in this action: *Bass v. Pennsylvania R. R. Co.*, 303 Pa. 382.

The case of *Van Zandt v. Phila., B. & W. R. R. Co.*, 248 Pa. 276, relied on by plaintiff, is not determinative of the instant case, for the reasons given in distinguishing it in *Bass v. Pennsylvania R. R. Co.*, supra. We there said that in the Van Zandt case the plaintiff was required to do his work where he was struck, that he relied on a signal to warn him of approaching trains, and that he did look for the train. There is no evidence in this case that Richards was required to stand where he was struck in order to do his work. In fact, the contrary appears. Burroughs did the work Richards was supervising and he was in no danger. There was no contention that Richards depended, or had any reason for doing so, on any signal; and it did not appear that Richards kept any watch whatever for an approaching train. We said in the Van Zandt case: "What is required of the workman is that he exercise care for his safety according to the circumstances. He knows he is occupying a place of great danger and his care must be commensurate with that danger."

The language of *Bardis v. Phila. & Reading Ry.*, 267 Pa. 352, 354, is particularly applicable here: "He chose to stand in a place of known and obvious danger. Even then he could have looked and listened and could either have seen or heard the car approaching. In any event, it would have taken but the fraction of a second to have stepped out of its road. . . . In thus assuming a place of danger he is presumed to know the consequences of his act. By the simple movement of his head, or the slightest attention to the circumstances surrounding him, he would have been warned to move. There can be no escape from the conclusion that he was guilty of contributory negligence." The attendant circumstances of this unfortunate accident are such that we are forced to the conclusion that the deceased's own negligence was the cause of his being struck by the train: *Kilgallen v. P. R. T. Co.*, 300 Pa. 451; *Sweatman v. Pennsylvania R. R. Co.*, 264 Pa. 286.

Judgment reversed and here entered for defendant.