## Pfahler, Administratrix, Appellant, *v.* Pennsylvania Power and Light Company.

Argued Dec. 4, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*F. Lyman Windolph,* with him *Louis S. May,* for appellant.

*T. L. Brubaker,* with him *Leroy Long* and *G. T. Hambright,* for appellee.

OPINION BY MR. JUSTICE DREW, January 18, 1945:

As administratrix of the estate of her deceased husband, Benjamin F. Pfahler, plaintiff brought this suit to recover damages for losses incident to his death which she alleged was caused by the negligence of defendant, Pennsylvania Power and Light Company. At the trial, the court having concluded that he was guilty of contributory negligence, entered a judgment of nonsuit which it later refused to take off, and plaintiff appealed.

This question of contributory negligence is the only one we need consider.

Defendant is a corporation of Pennsylvania which furnishes electric power for industrial and other uses to its customers, in Lancaster, and other places. The Consolidated Cigar Corporation, 840 North Prince Street, Lancaster, was such a customer. Its property consists of two buildings, a factory and a warehouse, separated by a 16-foot lawn or terrace. To service this customer, defendant entered its property at North Prince Street with three high tension wires running west, each about the diameter of a lead pencil, and proceeded over this terrace or open space at a distance approximately 6 feet from the south side of its factory building to a transformer in the rear. These wires were maintained at an approximate height of 40 feet above the ground until they reached a point approximately 18 feet from the transformer, where they sharply descended to a point 15 feet above the ground at the transformer and then dropped directly into it. In this descent the wires passed across the line of a large double window in the second story of the factory building, the base of which was 21 feet above the ground. This window and four or five other windows situated close by on the same side of the building were intended for light and air only.

The transformer was enclosed in a wire cage 5 feet high. On each of its four sides was attached a sign, approximately 10 by 20 inches in size, bearing the words "DANGER
   High
Voltage". A fifth sign, bearing like wording was located on the back or west side of the transformer above the top of the cage and in close proximity to the wires emerging from the cage. There was no such warning sign on the front or east side of the transformer above the top of the cage.

On December 27, 1938, plaintiff's husband was in the employ of John I. Nissley, a contractor, who had

been engaged to paint the interior of the second story of the factory building of the Consolidated Cigar Corporation. At about eight o'clock that morning, he and his fellow workers, John S. Nissley, the father of his employer, and Nelson Gingrich, entered the premises to go to work. They first attempted to transport equipment and supplies to the second floor of the building. Among the articles to be taken up were paint, brushes, ladders and what are known in the trade as tillies, all of which were furnished by their employer. Tillies are equipment used by painters to stand or sit upon when doing paint work above the ground, and consist of two rails connected by intermediate members or rungs covered by planking. The construction is very similar to that of a ladder with a plank fastened upon it. Two tillies were furnished for use on this job. One was made entirely of wood, the other of wood re-enforced by an iron rod embedded in the wood and running its entire length with metal clasps to hold this rod in place. This tilly was 22 feet 3 inches in length. The wooden tilly was slightly shorter, being 22 feet in length. The painting materials and smaller ladders were taken to the second floor of the building by way of the interior elevator, and an unsuccessful attempt was made to take the tillies up in the same way. They were, however, too long to permit of this being done, and it was decided by the painters to hoist them into the building through a second-story window. After an inspection Pfahler selected the window immediately east of the transformer because it appeared that it was the only one on the south side of the building which could be opened easily. This was a large double window with two movable sections. It was the only window the wires crossed. Any one of the other windows could have been used if the men had removed the sash, and, since the wires were approximately 15 feet above the base of those windows, the men could have lifted the tillies into the building in perfect safety. However, it should be said that this would have taken

more time and labor. Present at the time and partici-
pating in the hoisting of the tillies were the employer,
John I. Nissley, his father, Gingrich and Pfahler, dece-
dent. It appears, and is uncontradicted, that John S.
Nissley, the employer's father, noticed the danger sign
on the east side of the transformer and when Pfahler
wanted to use the western section of the window, which
was only 7 feet from the transformer, Nissley said to
him: "That is too close to the transformer; it says
'Danger.' Take the second window." The men then
moved over to the other section of the same window, a
location approximately 9 or 10 feet from the trans-
former. They then prepared to hoist the tillies through
the window. Gingrich and Nissley, Sr., went inside and
upstairs to the window to draw the ladders in. Pfahler
and Nissley, the employer, remained on the ground and
raised the first tilly, which was the all wooden one. In
maneuvering it through the window it struck the wires
but without injury to anyone. The second tilly, which
was re-enforced by the iron rod and metal clasps, was
raised in the same manner as the first, and while Pfahler
was on the ground holding it, and with the assistance of
the others, attempting to maneuver it around the wires
and into the window, it came in contact with the wires
and Pfahler was immediately killed. It just happened
that he was the only one actually holding the tilly at
the moment of contact. This explains the escape of the
other men. The wires were perfectly obvious to all the
men. John S. Nissley, at least, saw the danger signs,
which were close by and in full view, and his testimony
is uncontradicted that he called the attention of the
other men to the danger of working near the trans-
former, as a result of which they moved a few feet
farther away. What they were then told and what they
could plainly see, the transformer and the wires, was
as perfect a notice of impending danger as could be
given. In addition, when the wooden tilly came in con-
tact with the wires, all four men saw the wires and must

have realized the difficulty and danger of maneuvering a ladder around them and through the window. The men could not do what they attempted to do without having the wires immediately in the way and in their eyes. Pfahler, and the others, could hardly have exercised less care for their own safety. They were all guilty of gross negligence. If in such circumstances ". . . one heedlessly brings himself in contact with such a wire, and is injured in consequence, his imprudence must be regarded as a contributing cause, and will prevent recovery": *Haertel v. Pennsylvania Light and P. Co.*, 219 Pa. 640, 643, 69 A. 282; *Chernuka v. Phila. Electric Co.*, 320 Pa. 193, 182 A. 543.

The case of *Eberlin v. Philadelphia Elec. Co.*, 306 Pa. 239, 241, 159 A. 439, is analogous to the instant case. There this Court, in a per curiam opinion, affirmed the lower court which had refused to strike off a nonsuit, and said: ". . . he presents a case in which he himself is chargeable with contributory negligence. In the exercise of his ordinary senses he must have known the wires were there, but in addition to this he was given warning by his foreman." A similar result was reached in *Aljoe v. Penn. C. L. & P. Co.*, 281 Pa. 368, 126 A. 759.

We recognize, as said by us in *Fitzgerald v. Edison Electric Co.*, 200 Pa. 540, 543, 50 A. 161, the public ". . . while presumed to know that danger may be present, are not bound to know its degree in any particular case." But where the condition was obvious or there was abundant warning a person assuming a place of danger is presumed to know the consequences of his act and he must abide by the consequences. If the danger is "so apparent as to enable the court to declare contributory negligence as a matter of law," it will do so: *Chernuka v. Phila. Electric Co.*, supra, at p. 195. This is such a case, and the learned court below was bound to grant the motion for judgment of compulsory nonsuit.

Judgment affirmed, costs to be paid by appellant.