## Phillips, Appellant, *v.* Philadelphia Transportation Company et al.

Argued December 4, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

*Raymond A. White, Jr.,* for appellant.

*Harold Scott Baile,* with him *Bernard J. O'Connell,* for appellees.

OPINION BY MR. JUSTICE JONES, January 5, 1948:

This suit in trespass was brought to recover damages for personal injuries to the plaintiff due to the alleged negligence of Philadelphia Transportation Company which joined John Meehan and Son and Costonzo Centrone as additional defendants. At trial, the jury returned a verdict for the plaintiff in a specified sum against the original defendant but absolved the additional defendants of liability. On motion of the original defendant, the court below entered judgment n. o. v. for it on the ground that the plaintiff was guilty of contributory negligence as a matter of law; and that is the sole question here involved on this appeal by the plaintiff.

In the procedural situation present, the evidence in the case, as a whole, is to be viewed in the light most favorable to the plaintiff, any conflict in the testimony being resolved in his favor and the benefit of every inference of fact, reasonably deducible from the evidence, being accorded him: *Scholl v. Philadelphia Suburban Transportation Company,* 356 Pa. 217, 219-220, 51 A. 2d 732; *Williams v. Philadelphia Toilet and Laundry Company,* 150 Pa. Superior Ct. 643, 646, 29 A. 2d 336. So viewing the evidence, we find the material facts to be as follows.

Philadelphia Transportation Company, the original defendant, contracted with John Meehan and Son for the repaving of a portion of Richmond Street in North Philadelphia. Meehan assigned the contract to Costonzo Centrone who was to perform the actual work. Richmond Street runs in a north-south direction, and there is laid upon it a double set of street car tracks on which cars run in the respective opposite directions. Between 8 and 8:15 o'clock on the morning of October 2, 1944 (the repaving work having then been in progress some four to five weeks), Phillips, the plaintiff, an employee of Centrone, was performing his assigned duty of assisting in the removal of Belgian blocks (which had been

loosened by pneumatic drill) from along the west rail of the northbound track by picking up the blocks and passing them to a fellow worker for the latter's placement at the west curb line. In order to perform his task, Phillips assumed a standing position varyingly in the dummy area between the two tracks and by straddling the west (inside) rail of the northbound track. He faced slightly toward the south and, from that position, had a clear view of 625 feet in the southerly direction. In his immediate vicinity, at least two pneumatic drills and an air compressor were in almost continuous operation. The noise from those machines made it next to impossible for the plaintiff to hear the approach of oncoming street cars; and, no watchman had been assigned to warn of their approach. On the morning abovementioned, northbound cars passed the point of the plaintiff's work approximately every minute and a half. There is nothing in the record to show how often southbound cars passed. Street cars had passed the plaintiff, while he was in a standing position at his place of work, without touching him. But, the clearance in the dummy area was not sufficient for a person to remain there untouched if two street cars, travelling in opposite directions, passed simultaneously. While the plaintiff was working in one of the two positions above-described (there was some conflict as to exactly which one of the two he was in at the time of the accident), he looked toward the south and saw no street car approaching. A little later (estimated variously from one to nearly three minutes), as the plaintiff again leaned over to pick up a stone block, he was struck on the head by the left front of a northbound street car which was travelling at an approximate speed of twenty miles per hour. The impact threw Phillips under the street car; and, thereby he suffered the serious injury for which he instituted this suit.

Plainly enough, the plaintiff was working in a place and under conditions fraught with obvious risks and

dangers. Consequently, his legal duty in the circumstances was to exercise. a high degree of care for his own safety. But, whether he fulfilled that responsibility is not to be determined as a matter of law. There is no established legal standard on the basis whereof it can arbitrarily be said that, upon indisputable facts conclusive on the plaintiff, he was guilty of conduct which the law positively denounces as wrongful.

The nature of the plaintiff's work required him to be in the position of danger, where he was injured, for the discharge of the assigned duty of his employment; and that fact has its bearing on the relativity of the care he should have exercised and the requirements of his work. Being lawfully engaged on his job near or upon the tracks, he had rights and duties essentially different from those of persons about to cross railway tracks at grade in the course of their travel. The law did not require of him that he watch constantly and continuously for the approach of street cars. It was his legal duty to keep a reasonable lookout and to exercise care in the circumstances commensurate with the dangers and consistent with his faithful performance of the duties of his employment: *Van Zandt v. Philadelphia, Baltimore & Washington Railroad Co.*, 248 Pa. 276, 280-282, 93 A. 1010; *Chew v. Philadelphia Rapid Transit Co.*, 90 Pa. Superior Ct. 155, 159-161. The *Van Zandt* case contains an analysis of the practical reasons for the existence and application of the rule. For additional rulings that there is a relative difference in the degree of care required in the varying sets of circumstances above-mentioned, see *Copertino v. Chrobak*, 346 Pa. 49, 50-51, 29 A. 2d 504, and cases there cited; also *Susser v. Wiley*, 350 Pa. 427, 432, 39 A. 2d 616. In the *Chew* case, supra, it was said that these principles with respect to the degree of care required of employees apply in street railway cases as well as in railroad cases and to the employees of a city, or other employer, engaged in making

repairs to city streets upon which street car tracks are located.

There is nothing in this case to convict the plaintiff conclusively, as a matter of fact, of carelessness. And, that is what is required preliminarily before it can be said, as a matter of law, that one is guilty of contributory negligence. It is only when the evidence is clear and unmistakable, and no other inference can reasonably be drawn therefrom, that contributory negligence can be declared as a matter of law: *Perry v. Pittsburgh Railways Company*, 357 Pa. 608, 614, 55 A. 2d 354; *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, 287, 194 A. 194. Or, as we said in *Scholl v. Philadelphia Suburban Transportation Company*, supra, at p. 224,—". . . a court can so declare [contributory negligence as a matter of law] upon an existing set of facts ' . . . only in cases so clear that there is no room for fair and sensible men to differ in their conclusions from the available data': see Caulton v. Eyre & Co., Inc., 330 Pa. 385, 390, 199 A. 136; also Rea v. Pittsburgh Railways Company, 344 Pa. 421, 423, 25 A. 2d 730".

In the instant case, the plaintiff's work was upon the tracks and that is where he necessarily had to be. Street cars were proceeding northwardly at the rate of one every minute and a half. His only means of protecting himself was by watching. The ceaseless din from the pneumatic drills and the air compressor drowned out the noise of aproaching street cars. But, he could not watch constantly and perform his work. The most he could reasonably do was to look in the direction of possible oncoming danger frequently and regularly. And, that, he did according to the evidence in the case. Just before he was injured, he had looked to the south but saw no street car then approaching within his 625-foot view in that direction. But, very shortly thereafter, he was struck by a street car coming from the south and travel-

ing at a speed of twenty miles per hour. At that rate of speed, only twenty-one and three-tenths seconds elapsed from the instant the car came into, the clear view 625 feet away until it struck and injured the plaintiff. Yet, his last preceding look in the direction from which the street car came had been but a minute before, taking the evidence most favorable to the plaintiff as we are bound to assume the jury did. How, in the light of the facts of this case, it could be justifiably said, as a matter of law, that the plaintiff failed in the discharge of his legal duty in the circumstances, it is not possible to see. On the evidence in the case, any question of the plaintiff's negligence was peculiarly a matter for the jury to determine. Consequently, the learned court below erred in entering judgment n. o. v. for the defendant.

While the opinion for the court en banc cites the *Van Zandt* case, supra, it does not in any way distinguish or explain away that case which is a presently pertinent and controlling authority in the plaintiff's favor. The remaining cases cited in the opinion of the court below— *Richards v. Reading Company*, 333 Pa. 513, 5 A. 2d 542; *Kilgallen v. Philadelphia Rapid Transit Co.*, 300 Pa. 451, 150 A. 746; and *Bass v. Pennsylvania R. R. Co.*, 303 Pa. 382, 154 A. 714, which the appellee also cites and relies upon exclusively in its brief—are not in point. The respective opinions in those cases clearly and expressly set forth that the injured person in each instance was in a dangerous place, not because his work required him to be there but because he had voluntarily chosen that position. It is quite evident why a different legal duty rested upon the injured persons in the cited cases than what the law imposed upon the plaintiff in the present circumstances to which the rule of the *Van Zandt* case is applicable.

The judgment is reversed with directions that judgment be entered for the plaintiff on the jury's verdict.